## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| TINA MURRAY,<br>    *Plaintiff*, | ) | 3:23-CV-01019 (SVN) |
| | ) | |
| v. | ) | |
| | ) | |
| WAL-MART STORES EAST, LP,<br>    *Defendant*. | ) | September 17, 2025 |

## RULING AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Sarala V. Nagala, United States District Judge.

In this disability discrimination action, Plaintiff Tina Murray alleges that her former employer, Defendant Wal-Mart Stores East, LP ("Wal-Mart") discriminated against her by terminating her employment after she suffered a neck injury and, later, a concussion. Plaintiff's complaint alleges that Defendant discriminated against her based on her disability, failed to provide reasonable accommodation, and retaliated against her for seeking a reasonable accommodation, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* and the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60 *et seq.*

Defendant seeks summary judgment on all of Plaintiff's claims, asserting that Plaintiff failed to provide any evidence that Defendant discriminated against her and that she was terminated for the legitimate non-discriminatory reason of chronic absenteeism from her job; that Plaintiff did not request a reasonable accommodation related to her concussion; and that she was not retaliated against. Plaintiff opposes Defendant's motion.

For the reasons explained below, the Court agrees with Plaintiff that there are genuine issues of material fact as to all of Plaintiff's claims. Thus, Defendant's motion for summary judgment is DENIED in full.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The following factual background reflects the Court's review of Plaintiff's amended complaint, ECF No. 21; Defendant's Local Rule ("L.R.") 56(a)1 Statement, ECF No. 58; Plaintiff's L.R. 56(a)2 Statement, ECF No. 61-2; Plaintiff's Statement of Additional Material Facts, ECF No. 61-2 ("Pl.'s Add'l Facts"); and all supporting materials. Unless otherwise noted, the parties agree on the following facts.

### A.    Plaintiff's Employment with Defendant

Plaintiff's relevant term of employment with Defendant began in 2020. Pl.'s L.R. 56(a)2 St. ¶¶ 3–4. That year, Plaintiff was hired as a deli worker at the Putnam, Connecticut store. *Id.* On December 9, 2020, Plaintiff was voluntarily transferred to the position of Digital Personal Shopper. *Id.* ¶ 5. As a Digital Personal Shopper, Plaintiff's job responsibilities included non-physical tasks such as providing customer service and directly interfacing with customers, as well as physical tasks such as moving, lifting, carrying, and placing merchandise weighing between ten and fifty pounds. *Id.* ¶ 6; Pl.'s Job Description, Ex. F, Def.'s Mot., ECF No. 57-2 at 60–61.

On an unspecified date in February of 2021, Plaintiff injured her neck in a non-work-related accident. Pl.'s L.R. 56(a)2 St. ¶ 8. On February 19, 2021, Plaintiff signed an acknowledgement with Defendant that she had "the ability to perform the essential functions of [her] position either with or without a reasonable accommodation." Pl.'s Aff., Ex. G, Def.'s Mot., ECF No. 57-2 at 64. On February 24, 2021, though, Plaintiff's physician provided a note to Defendant stating Plaintiff was cleared to return to work, but needed to be on light duty and could not lift items weighing more than ten pounds or climb ladders, and was at risk of serious injury from whip-lash-like movements. Pl.'s L.R. 56(a)2 St. ¶¶ 9–10; Feb. 24, 2021, Dr.'s Note, Ex. H, Def.'s Mot., ECF No. 57-2 at 66.

That same day, Plaintiff reported her physical limitations to management and stated that she would require surgery. Pl.'s L.R. 56(a)2 St. ¶¶ 11–12. Management informed her that she would need to follow the appropriate accommodation process; based on the provided instructions, Plaintiff contacted Sedgwick, Defendant's third-party administrator for accommodations and leaves of absence, to request an accommodation for "light duty." *Id.* ¶¶ 13, 15; Pl.'s Dep., Ex. A, Def.'s Mot., ECF No. 57-2 at 20. Despite her request for "light duty," Plaintiff submitted a medical certification from her physician that specified Plaintiff would "be required to be away from work for a continuous period . . . from February 25, 2021, until May 27, 2021," and that Plaintiff was unable to perform certain of her job functions given the weightlifting restrictions and inability to climb ladders. Pl.'s L.R. 56(a)2 St. ¶¶ 16–18; Med. Cert., Ex. I, Def.'s Mot., ECF No. 57-2 at 68–70. Plaintiff went on medical leave beginning on February 25, 2021. Pl.'s L.R. 56(a)2 St. ¶ 22.

On March 26, 2021, Sedgwick responded to Plaintiff's accommodation request, indicating that because of Plaintiff's medical restrictions outlined in her medical certificate, Plaintiff's "specific request" could not be approved because Plaintiff had "restrictions that prohibit[ed] [her] from performing [her] job either with or without accommodation." Sedgwick Rep., Ex. J, Def.'s Mot., ECF No. 57-2 at 72. Specifically, while her job required carrying, lifting, and placing merchandise and supplies that weighed up to fifty pounds without assistance, her doctor had stated that she could not lift more than ten pounds or climb ladders. *Id.* Thus, Defendant offered unpaid leave as an accommodation, consistent with Plaintiff's physician's certification. *Id.*; Pl.'s L.R. 56(a)2 St. ¶ 19–21.

Plaintiff's medical leave of absence continued through June 13, 2021, when she returned to work following her neck surgery. Pl.'s L.R. 56(a)2 St.¶¶ 22–24. Prior to returning to work, Plaintiff's physician issued another note indicating that Plaintiff could return to work but could

not lift anything heavier than 25 pounds "unassisted." *Id.* ¶ 25; June 2021 Dr.'s St., Ex. K, Def.'s Mot., ECF No. 57-2 at 75. Plaintiff returned to work and was provided reasonable accommodation by being assigned to work at the store's photo desk. Pl.'s L.R. 56(a)2 St. ¶¶ 25–27. After a few weeks of what Plaintiff characterizes as "light duty" at the photo desk, she resumed working "normal duty." Pl.'s Dep. Tr., Ex. 1, Pl.'s Opp., ECF No. 61-4 at 17.[1]

In the summer of 2021, Plaintiff was absent from work on several occasions. Between mid-June and mid-August of that year, Plaintiff was absent from work on June 18, July 4, August 8, 11, 12, 13, 16, 19, and 20, 2021. Pl.'s L.R. 56(a)2 St. ¶¶ 35–37. Further details concerning these absences are discussed below.

On August 18, 2021, Plaintiff left work early to go to the hospital, after sustaining a non-work-related concussion. *See id.* ¶ 33. After leaving, Plaintiff exchanged a series of text messages with her team leader, Spencer, stating that she had a concussion and asking whether Spencer wanted her to "walk back to work" or "just come in tomorrow." Pl.'s Commc'ns, Ex. 3, Pl.'s Opp., ECF No. 61-6 at 1. After not hearing from Spencer for approximately eleven minutes, Plaintiff said she would go home and rest; Spencer responded approximately twelve minutes after that, telling Plaintiff she could remain home for the rest of the day. *Id.* The next day at 4:09 p.m., Plaintiff texted Spencer to tell him she was "passing out like [she] was yesterday and was "going to sleep the rest of the day." *Id.* at 2. Spencer acknowledged the message by stating "Sorry to hear that. Must be rough for sure[,]" but did not state Plaintiff was excused for the workday. *Id.* The following day, August 20, 2021, Plaintiff texted Spencer her discharge instructions from her hospital visit, which specified that Plaintiff could not watch tv, or use computers and cellphones

---

[1] Plaintiff's brief states, without citation, that Plaintiff was "moved back into her regular job with the accommodation of receiving assistance when she needed to lift more than 25 pounds." ECF No. 61-1 at 8.

until the symptoms resolved. *Id.* at 4. Spencer responded only with a wide-eyed, wide-mouthed emoji. *Id.*

B. <u>Defendant's Attendance Policy and Plaintiff's Absences</u>

Defendant's attendance policy distinguishes between authorized absences—including approved leaves of absence, reasonable accommodations, extraordinary circumstances approved by a supervisor or HR representative, and other absences protected by law—and unauthorized absences, defined as absences that are "not considered authorized or approved by a supervisor or manager." Def.'s Attendance Pol'y, Ex. C, Def.'s Mot., ECF No. 57-2 at 51–52. Regardless of whether an absence is authorized or not, employees must report an absence using one of two methods: calling the Associate Information Line call in number, or using the Report and Absence form available on WalmartOne. *Id.* at 50. Under the policy, failure to report *any* type of absence pursuant to one of these two methods "will result as the absence or late arrival counted as a No Call/No Show." *Id.* The policy further specifies that if an employee "accumulate[s] five (5) or more occurrences/points in a rolling six-month period," the employee "will be subject to termination." *Id.* at 51. The number of points awarded for an unauthorized absence varies, with an absence on a "Key Event Date" such as a holiday resulting in two points, and a No Call/No Show resulting in up to three points: two for failing to report the absence and one for the absence itself. *Id.*

Prior to Plaintiff's August 18, 2021, concussion, she had exhausted all her accrued sick and vacation time. Pl.'s L.R. 56(a)2 St. ¶ 35. As noted above, before and after that date, Plaintiff was absent from work on June 18, July 4, and August 8, 11, 12, 13, 16, 19, and 20, 2021. *Id.* ¶ 35–36. The parties characterize Plaintiff's absences as follows:

- The parties agree that the absences on August 11, 12, 13, and 16, 2021, were due to alleged exposure to COVID-19, so Defendant excused these absences. *Id.* ¶ 37.

- Defendant contends that the absences on June 18, July 4, and August 8, 19, and 20, 2021, were unexcused. Plaintiff does not contest that the absences on June 18, July 4, and August 8 were unexcused, but states that she requested the absences on August 19 and 20 be excused as an accommodation for her concussion. *Id.* ¶ 38.

- Defendant contends Plaintiff left work early on July 14 and August 18, 2021, which was unauthorized; Plaintiff states she received permission to leave work early on August 18 to seek treatment for her concussion, but does not justify her early departure on July 14. *Id.* ¶ 39; ECF No. 61-4 at 20.

In Plaintiff's deposition, she testified that at some point after she missed work for the concussion, she asked store manager Sandy Klein if Defendant could "forgive the three days"—August 18, 19, and 20—when she was "out for the concussion." Pl.'s Dep. Tr., ECF No. 61-4 at 22. According to Plaintiff, Klein said she "would think about it." *Id.* Klein contends, on the other hand, that there was never "any indication that [Plaintiff] required accommodations due to a head injury/concussion." Klein Aff., Def.'s Ex. B, ECF No. 57-2 at 47.

Ultimately, Plaintiff was terminated on August 26, 2021, without further discussion concerning her request for forgiveness of her absences on August 18, 19, and 20. Pl.'s L.R. 56(a)2 St. ¶ 46. According to Plaintiff, when she was terminated, Klein stated that Plaintiff "should have saved [her] sick time," and that Plaintiff should "take this []as a learning experience." ECF No. 61-4 at 22.

The parties do not dispute that Plaintiff knew accrual of five or more points was grounds for termination. Pl.'s L.R. 56(a)2 St. ¶ 45. The parties also do not dispute that Plaintiff received one point for each of her unauthorized absences on August 8, 19, and 20, 2021, and two points for her absence on July 4. *Id.* ¶¶ 41–42; ECF No. 57-2 at 46. Defendant further contends Plaintiff had additional unauthorized absences for which points had not been assigned. Def.'s L.R. 56(a)1

St. ¶ 43.[2]  Plaintiff denies all five points were for unauthorized absences.  Pl.'s L.R. 56(a)2 St. ¶ 43, as she believes that the August 18 absence was excused based on the text message exchange with her supervisor, and contends the August 19 and 20 absences should have been excused as an accommodation for her concussion.  Pl.'s L.R. 56(a)2 St. ¶¶ 40, 43.

Defendant argues that the reason for Plaintiff's termination was excessive absenteeism; Plaintiff, on the other hand, contends she was fired due to her concussion disorder, which she characterizes as a disability.  Pl.'s L.R. 56(a)2 St. ¶¶ 46–47.

C.  The Present Action

Plaintiff's amended complaint alleges six counts:  one count each for disability discrimination, failure to accommodate, and retaliation, under the ADA (Counts One, Three, and Five), and one count each for disability discrimination, failure to accommodate, and retaliation under the CFEPA (Counts Two, Four, and Six).  ECF No. 21 at 8–12.  Following discovery, Defendant filed the instant motion for summary judgment, ECF No. 57, which Plaintiff opposes, ECF No. 61.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides, in relevant part, that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  A disputed fact is material only where the determination of the fact might affect the outcome of the lawsuit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  With respect to genuineness, "summary judgment will not lie if the

---

[2] At oral argument, Defendant argued that Plaintiff had accrued at least five points by August 8, for her absences on June 18, July 14, and August 8 (one point each) and July 4 (two points).  As this particular breakdown of when and how Plaintiff accrued five points was not argued in Defendant's written filings, however, the Court does not consider Defendant's newly-raised argument that she accrued five points by August 8, 2021.

dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden of establishing there is no genuine issue of material fact in dispute will be satisfied if the movant can point to an absence of evidence to support an essential element of the non-moving party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The movant bears an initial burden of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323.  A movant, however, "need not prove a negative when it moves for summary judgment on an issue that the [non-movant] must prove at trial. It need only point to an absence of proof on [the non-movant's] part, and, at that point, [the non-movant] must 'designate specific facts showing that there is a genuine issue for trial.'" *Parker v. Sony Pictures Ent., Inc.*, 260 F.3d 100, 111 (2d Cir. 2001) (quoting *Celotex Corp.*, 477 U.S. at 324). The non-moving party, in order to defeat summary judgment, must come forward with evidence that would be sufficient to support a jury verdict in his or her favor.  *Anderson*, 477 U.S. at 249. If the non-movant fails "to make a sufficient showing on an essential element of [their] case with respect to which [they have] the burden of proof," then the movant will be entitled to judgment as a matter of law.  *Celotex Corp.*, 477 U.S. at 323.

In considering a motion for summary judgment, a court "must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Kee v. City of New York*, 12 F.4th 150, 158 (2d Cir. 2021) (citation and internal quotation marks omitted).  The Court may not make credibility determinations or

weigh the evidence. *Proctor v. LeClaire*, 846 F.3d 597, 608 (2d Cir. 2017). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991).

## III.    COUNTS TWO AND FIVE:  FAILURE TO ACCOMODATE

First, the Court concludes that Defendant is not entitled to summary judgment on Plaintiff's claims for failure to accommodate under the ADA and CFEPA.[3]  Defendant contends that Plaintiff never made a request for a reasonable accommodation related to her concussion.  But because a reasonable jury could find that Plaintiff requested accommodation in the form of excused absences for missing work on August 18, 19, and 20, Defendant's summary judgment motion must be denied as to Counts Two and Five.

A.    <u>Legal Standard</u>

"The ADA prohibits 'discriminat[ion] against a qualified individual on the basis of disability.'"  *McBride v. BIC Consumer Products Mfg. Co., Inc.*, 583 F.3d 92, 96 (2d Cir. 2009) (quoting 42 U.S.C. § 12112(a)).  Under the ADA, discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability[.]"  42 U.S.C. § 12112(b)(5)(A).  Likewise, the CFEPA prohibits discrimination in employment on the basis of disability, "except in the case of a *bona fide* occupational qualification or need," *Beason v. United Techs. Corp.*, 337 F.3d 271, 276–77 (2d Cir. 2003) (citing Conn. Gen.Stat. § 46a–60(a)(1), and requires employers to reasonably accommodate an employee's disability, *see Eldridge v. Hosp. of Cent. Conn.*, 230 Conn. App. 666, 675 (2025). "While the CFEPA defines disability more broadly than the ADA, the ADA and CFEPA apply the

---

[3] Because Plaintiff contends that Defendant's failure to accommodate her supports her disability discrimination claims in Counts One and Four, the Court addresses her failure to accommodate claims first.

same standards for reasonable accommodation." *Green v. Cellco P'ship*, 218 F.Supp.3d 157, 167 (D. Conn. 2016).

To establish a *prima facie* failure to accommodate claim under either the ADA or the CFEPA, a plaintiff must show that: (1) she is a person with a disability within the meaning of the statute; (2) her employer was covered by the statute and had notice of her disability; (3) with reasonable accommodation, she could perform the essential functions of her job; and (4) her employer refused to make a reasonable accommodation. *McMillan v. City of New York*, 711 F.3d 120, 125–26 (2d Cir. 2013) (quoting *McBride*, 583 F.3d at 97; *Fox v. Costco Wholesale Corp.*, 918 F3d 65, 73 (2d Cir. 2019); *Eldridge*, 230 Conn. App. at 675. In addition, at least under the ADA, the plaintiff must show "'the *connections* between (1) the failure to accommodate a disability, (2) the performance deficiencies, and (3) the adverse employment action.'" *Natofsky v. City of N.Y.*, 921 F.3d 337, 352 (2d Cir. 2019) (emphasis in original) (quoting *Parker v. Sony Pictures Entm't, Inc.*, 260 F.3d 100, 108 (2d Cir. 2001)); *see also Piligian v. Ichan School of Med. at Mount Sinai*, No. 1:17-CV-1975 (ALC) (SDA), 2020 WL 6561663, at *5-6 (S.D.N.Y. Apr. 7, 2020).[4]

An employee's request for accommodation triggers a duty on the part of the employer "'to investigate that request and determine its feasibility,'" which is known as the interactive process. *Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 185 (2d Cir. 2006) (quoting *Parker*, 260 F.3d at 338); *Eldridge*, 230 Conn. App. at 675. If a plaintiff makes the *prima facie* showing of her employer's failure to accommodate, the "burden of proof shifts to the defendant to demonstrates that such

---

[4] Defendant is incorrect that the failure to provide a reasonable accommodation must be motivated by discriminatory intent. *See Brooklyn Ctr. For Psychotherapy, Inc. v. Philadelphia Indemnity Ins. Co.*, 955 F.3d 305, 312 (2d Cir. 2020) ("As with disparate-impact claims, failure-to-accommodate claims do not require proof of discriminatory intent.").

accommodations would present undue hardships and would therefore be unreasonable." *McMillan*, 711 F.3d at 128; *Eldridge*, 230 Conn. App. at 675.

Defendant contests only Plaintiff's *prima facie* showing here, arguing that Plaintiff failed to request a reasonable accommodation relating to her concussion. Thus, the Court addresses only that issue, and does not reach the question of whether the requested accommodation would present an undue hardship to Defendant. Moreover, Plaintiff confirmed at oral argument that her failure to accommodate claim relates only to her concussion-related absences, and not to her return to work after her neck surgery, so the Court addresses only the concussion-related absences in this section.

B. Plaintiff's Disability

As an initial matter, although the parties do not dispute that Defendant is subject to the ADA and the CFEPA, their briefing appears to dispute whether Plaintiff's concussion is properly considered a disability under these statutes. *Compare* ECF No. 57-1 at 12 ("and even if Plaintiff's alleged head injury constituted a disability under the applicable statutes. . .") *with* ECF No. 61-1 at 6 ("Defendant fails to contend that plaintiff does not have a disability within the meaning of the ADA or the CFEPA."). Under the ADA, a person is disabled if she has a "physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1). Under the CFEPA, a person is disabled if she has "any chronic physical handicap, infirmity, or impairment, whether congenital or resulting from bodily injury, organic processes or changes or from illness." Conn. Gen. Stat. § 46a-51(15). "Because [the CFEPA's] definition does not include the requirement that a major life activity be substantially limited, it is generally regarded as broader in scope than the ADA's definition of disability." *Green*, 218 F. Supp. 3d at 164.

At oral argument, Defendant conceded that, for purposes of its motion for summary judgment, the Court may consider Plaintiff's concussion to be a disability. Thus, the Court does

not reach the question, but notes that, depending on the severity of the concussion, it is possible a concussion would not be considered a disability under the ADA. *See Adams v. Citizens Advice Bureau*, 187 F.3d 315, 316–17 (2d Cir. 1999) (noting that a temporary injury resulting from a car crash resulting in missing work for approximately three months, with "no evidence" of substantial "limit[s] in major life activities as a result of that injury," did not qualify as a disability). Nonetheless, given Defendant's concession, the Court assumes Plaintiff's concussion qualifies as a disability and proceeds with the remaining steps of the *prima facie* analysis.

C.  Request for Accommodation

Because there is a genuine dispute of material fact concerning whether Plaintiff requested an accommodation for her concussion, Defendant's motion for summary judgment must be denied as to Counts Two and Five.

"'An employer's duty to accommodate an employee's disability is ordinarily activated by a request from the employee, and the request must be sufficiently direct and specific to give the employer notice of the needed accommodation.'" *Dooley v. JetBlue Airways Corp.*, 636 F. App'x. 16, 19 (2d Cir. 2015) (summary order) (quoting *Tobin v. Liberty Mut. Ins. Co.*, 553 F.3d 121, 129 (1st Cir. 2009)). Plaintiff's request for an accommodation "would matter because, generally, it is the responsibility of the individual with a disability to inform the employer that an accommodation is needed." *Graves*, 457 F.3d at 184 (internal citations omitted). On the other hand, the Second Circuit has been clear that an employer cannot "'refuse [ ] to make [an] accommodation[ ],' . . . that it was never asked to make.'" *Dooley*, 636 F. App'x at 18 (quoting *McMillan*, 711 F.3d at 126); *see also Fox*, 918 F.3d at 73 (affirming grant of summary judgment where the plaintiff "never asked for an accommodation"); *Eldridge*, 230 Conn. App. at 675 ("A plaintiff who fails to initiate or to participate in the interactive process in good faith cannot prevail on an employment discrimination claim under CFEPA.").

Plaintiff contends that Defendant was on notice of Plaintiff's request for an accommodation that her absences on August 18, 19, and 20 be excused or designated as authorized leave, such that they would not accrue points under Defendant's attendance policy. She claims that she made the request for accommodation through (1) text messages exchanged with her supervisor; and (2) a subsequent request to the store manager after the absences occurred that the three days be forgiven. The Court concludes that, although the text messages did not suffice to put Defendant on notice of Plaintiff's request, there is a question of fact about whether her request to the store manager did.

As noted above, on August 18, 2021, Plaintiff communicated to her supervisor via text message that she had a concussion and was leaving the hospital, and asked if she should return to work or go home (to which the supervisor later replied, "go home and rest"); on August 19, she told him that she was "passing out like [she] was yesterday" and that she was going to "sleep the rest of the day," and on August 20, she provided him photos of her discharge letter from the hospital. ECF No. 61-6 at 1–5.

No reasonable jury could conclude that these text messages put Defendant on notice of Plaintiff's request for accommodation. In the first of the messages, Plaintiff texted her supervisor that she had a concussion and offered to return back to work that same day to finish the remainder of her shift—the opposite of requesting an excused absence. ECF No. 61-6 at 1. Moreover, at no other point in her text messages with her supervisor did Plaintiff request so much as a day off, much less an official accommodation while concussed. The closest Plaintiff came to requesting an excused absence is her 4:09 p.m. message on Thursday August 19, 2021, where she states that she is "going to sleep the rest of the day." *Id.* at 2. This is not, however, a request for time off or a request for an accommodation that her absence be excused; instead, this is Plaintiff's statement at the end of the workday informing her supervisor that she would not be making it in to work for

13

any portion of the shift.  Finally, the discharge notice from the hospital that Plaintiff sent to her supervisor on August 20 did not provide any recommendation from the reviewing physician that Plaintiff needed time off from work or other reasonable accommodation while she recovered from her concussion.  *Id.* at 4–5.[5]  Indeed, the discharge notice conveyed through text message stands in stark contrast to the previous medical certifications Plaintiff provided in connection with her neck injury that laid out specific limitations on Plaintiff's job responsibilities or outright stated she could not return to work for a period of time.  *See, e.g.*, ECF No. 57-2 at 66, 68–70.  Thus, it is clear that, assuming Plaintiff's text messages with her supervisor were even a proper avenue through which to raise a request for accommodation, none of her text messages served as notice of a request for accommodation.

But there is a genuine dispute of material fact concerning whether Plaintiff requested the accommodation of excusing her concussion-related absences with the store manager after the absences occurred.  Plaintiff recounts that, on an unspecified day after those absences, she went into the store and asked store manager Sandy Klein if Defendant could "forgive" the three days "for going to the hospital" and being "out for the concussion."  ECF No. 61-4 at 22.  According to Plaintiff, Klein allegedly stated that she would "think about it."  *Id.*  Klein, however, states that Plaintiff never "advise[d] management that she required an accommodation as a result of a head injury/concussion."  ECF No. 57-2 at 47.  There is thus a genuine dispute of fact about whether Plaintiff conveyed the request for accommodation through this alleged conversation.  On summary

---

[5] While the notice specified "no TV, Computers, Video Games, or Phones until symptoms resolve," this does not translate to a request for an accommodation.  ECF No. 61-6 at 4–5.  Plaintiff was communicating this notice to her supervisor via texts on her phone, calling into question the strictness with which Plaintiff's screen restriction needed to be observed.  Additionally, Plaintiff did not use the restrictions in the notice as an introduction to making a request for any accommodation from her supervisor.  Thus, this restriction cannot be fairly said to be equivalent to a request for accommodation.

judgment, the Court cannot make a credibility determination about which of these two accounts is to be believed.  *See Proctor*, 846 F.3d at 608.

That Plaintiff's request may have come after the absences is of no consequence, as Defendant's attendance policy provides that an employee's medical emergency can excuse the failure to report an absence in advance.  *See* ECF No. 57-2 at 50.[6]  Nor is the fact that Plaintiff claims to have made the request to the manager, instead of to Sedgwick, dispositive.[7]  *See, e.g.*, *Pinckney v. Carroll*, No. 18-CV-12898 (VEC), 2019 WL 6619484, at *8 n.10 (S.D.N.Y. Dec. 4, 2019) ("a plaintiff's failure to comply with [a defendant's] internal policies does not necessarily shield [d]efendants from their obligation under federal law to make reasonable accommodations in response to less formal requests from disabled individuals"); *Stern v. McDonough*, No. 5:18-CV-71 (MAD/TWD), 2022 WL 4236298, at *4 (S.D.N.Y. Sept. 14, 2022) ("[c]ourts have regularly held that '[w]hat matters under the ADA are not formalisms about the manner of the request, but whether the employee . . . provides the employer with enough information that, under the circumstances, the employer can be fairly said to know of both the disability and desire for an accommodation.'" (quoting *Malzberg v. New York Univ.*, No. 19-CV-10048, 2022 WL 889240, *14 (S.D.N.Y. Mar. 25, 2022) (collecting cases))).  Viewing the evidence in the light most favorable to Plaintiff, a reasonable jury could conclude that Plaintiff made a request for a

---

[6] At oral argument, Defendant contended that it had no need to accommodate Plaintiff when she spoke with Klein because Plaintiff had already accrued five points under the attendance policy as of August 8, and thus was subject to termination as of that date.  This argument was not, however, made in either Defendant's opening or reply briefing. And it is undisputed that Plaintiff was not terminated until after the conversation with Klein in which she asked for the accommodation, even though Defendant now contends Plaintiff could have been terminated as early as August 9.
[7] Defendant correctly points out that Plaintiff had just used its leave procedure successfully following her neck surgery. *See* ECF No. 57-1 at 12.  However, drawing all reasonable inferences in favor of Plaintiff, as the Court must on a motion for summary judgment, Plaintiff's concussion was much more sudden, and arguably did not allow her to seek leave through Sedgwick before failing to report for work.  Regardless, as discussed above, what matters is not the method of notice, but whether Plaintiff put Defendant on notice of Plaintiff's disability and need for accommodation, which a reasonable jury could find she did.

reasonable accommodation of her alleged disability that was rejected by Defendant, when it decided to terminate her employment instead of forgiving the concussion-related absences.

Because there is a genuine question of material fact about whether Plaintiff made a request to Defendant for a reasonable accommodation, and Defendant's only argument supporting its summary judgment motion on Plaintiff's failure to accommodate claim related to the concussion-related absences is that it did not have notice of Plaintiff's request for accommodation, the motion must be denied as to Counts Two and Five.

## IV.    COUNTS ONE AND FOUR:  DISABILITY DISCRIMINATION

Next, the Court denies Defendant's motion for summary judgment as to Counts One and Four, relating to Plaintiff's disability discrimination allegations, because a reasonable jury could conclude Plaintiff was terminated because of her disability.

### A.  Legal Standard

Both the ADA and the CFEPA prohibit discrimination on the basis of disability and apply the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to the discrimination analysis. *See Green*, 218 F. Supp. 3d at 162; *DeAngelo v. Yellowbook Inc.*, 105 F.Supp.3d 166, 180 (D. Conn. 2015).  The only distinction lays in "the CFEPA's broader definition of disability." *Green*, 218 F. Supp. 3d at 162; *see also Beason*, 337 F.3d at 278–79.

The Court rejects Plaintiff's argument that *McDonnell Douglas* is not the correct framework for analyzing this case.  Pl.'s Opp. Br., ECF No. 61-1 at 9 (arguing *McDonnell Douglas* does not apply because this is "not a pretext case").  Plaintiff contends that Defendant had a no-fault leave policy, enforcement of which "is per se discriminatory." *Id.* at 11–12 (citing *Equal Employment Opportunity Commission Enforcement Guidance:  Reasonable Accommodation and Undue Hardship under the Americans with Disabilities Act*, No. 915.002, 2002 WL 31994335, at *14 (Oct. 17, 2002)).  Under the EEOC Guidance, an employer may not apply a no-fault leave

policy—defined as one "under which employees are automatically terminated after they have been on leave for a certain time"—to an employee with a disability who needs leave beyond the set period.  *Id.*

Defendant's leave policy here cannot fairly be characterized as a no-fault policy under this definition.  The policy clearly enumerates certain types of excused absences, for which points do not accumulate or count against the employee, and specifies that approved leaves of absence are exempted from the accumulation of points towards termination.  *See* ECF No. 57-2 at 50–51.  The fact that Plaintiff returned to work without accumulating any points following an extended leave of absence for her neck surgery underscores that point.  Thus, the policy is not *per se* discriminatory.  Moreover, although the Second Circuit has noted that *McDonnell Douglas* is "not helpful" when it is undisputed that an employer took adverse action against an employee because of her disability, *see McMillan*, 711 F.3d at 129, here the parties dispute whether Defendant terminated Plaintiff because of her disability or, instead, because of her chronic absences—several of which are not related to her alleged disability—so *McDonnell Douglas* is the correct framework.

In order to establish a *prima facie* case of disparate treatment disability discrimination under the ADA and the CFEPA, a plaintiff must show that:  (1) the employer is subject to the ADA/the CFEPA; (2) the plaintiff is disabled within the meaning of the statute or perceived to be so by her employer; (3) she was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; (4) she suffered an adverse employment action; and (5) the adverse action was imposed because of her disability.  *Davis v. N.Y.C. Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015) (citing *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 134 (2d Cir. 2008)); *see also Green*, 218 F. Supp. 3d at 162; *Barbabosa v. Bd. of Educ. of Town of Manchester*, 189 Conn. App. 427, 437 (2019).  To satisfy the final prong of her *prima facie* case, Plaintiff must

show that the adverse employment action she experienced "'took place under circumstances giving rise to an inference of discrimination.'"  *Davis*, 804 F.3d at 235 (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000)).

In the context of disability discrimination, an employer's failure to engage in a sufficient interactive process with respect to a possible accommodation, when there is evidence that an accommodation was possible, may constitute *prima facie* evidence of disability discrimination. *McBride*, 583 F.3d at 100-01; *see also Irizarry v. HNS Mgmt. Co., Inc.*, No. 19-cv-922 (VLB), 2021 WL 1178298, at *6 (D. Conn. Mar. 29, 2021) ("failure to engage in the interactive process does not itself give rise to liability under the ADA    . . . unless the employee bears their burden of persuasion to show that an accommodation was possible") (collecting cases); *Curry v. Allan S. Goodman, Inc.*, 286 Conn. 390, 418 (2008) ("Failure of the employer to engage in the interactive process alone may be sufficient grounds for denying a defendant's motion for summary judgment [in a CFEPA claim], because it is, at least some evidence of discrimination.").

If Plaintiff establishes a *prima facie* case of discrimination, the burden shifts to her employer to "'articulate some legitimate, nondiscriminatory reason'" for its conduct.  *Fox*, 918 F.3d at 71 (quoting *McDonnell Douglas*, 411 U.S. at 802).  Once the employer has articulated such a reason, the burden shifts back to the plaintiff to demonstrate that the employer's reason was "a pretext or discriminatory in its application."  *Id.*  Plaintiff may attempt to show pretext, for example, "by reliance on the evidence comprising the *prima facie* case" or "by demonstrating that similarly situated employees outside the protected class were treated differently."  *Primmer v. CBS Studios, Inc.*, 667 F. Supp. 2d 248, 260 (S.D.N.Y. 2009) (citations and internal quotation marks omitted) (italicization added).  A plaintiff may also demonstrate pretext by showing "such weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered

legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Id.*

The ADA "requires a plaintiff alleging a claim of employment discrimination to prove that discrimination was the but-for cause of any adverse employment action." *Natofsky*, 921 F.3d at 348. Under the CFEPA, however, the plaintiff need only show that discrimination was a motivating factor for the adverse action. *Wallace v. Caring Sol's, LLC*, 213 Conn. App. 605, 625 (2022). The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff. *Rambacher v. Bemus Point Cent. Sch. Dist.*, 307 F. App'x 541, 543 (2d Cir. 2009) (summary order) (citing *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004)).

B.  Step One:  Plaintiff's *Prima Facie* Case

Viewing the record in the light most favorable to Plaintiff, she has made a *prima facie* showing of disability discrimination.

As noted above, Defendant concedes for purposes of its motion that it is subject to the ADA and the CFEPA and that Plaintiff's concussion constitutes a disability.  The Court thus focuses on whether Plaintiff was qualified for her job, with or without a reasonable accommodation, and whether Plaintiff raises an inference of discriminatory intent.  It concludes she has done both.

The Court first rejects Defendant's argument that Plaintiff was not qualified for her job, with a reasonable accommodation.  Plaintiff contends that, with a reasonable accommodation of a leave of absence for the three days she was absent due to her concussion, she was qualified to continue in her position.  Plaintiff is correct that a finite leave of absence is considered a reasonable accommodation under the CFEPA. *See Thomson v. Dep't of Social Servs.*, 176 Conn. App. 122,

130 (2017). With respect to the ADA, although the Second Circuit "has never resolved the question of whether paid or unpaid leave can constitute reasonable accommodation under the ADA," *Petrone v. Hampton Bays Union Free School Dist.*, 568 Fed. App'x 5, 7 n.2 (2d Cir. 2014), "most other circuits have concluded that the 'reasonable accommodation' requirement of the ADA may require an employer to grant a reasonable unpaid leave of absence for a disabled employee." *Green*, 218 F. Supp. 3d at 164 (citing *Graves*, 457 F.3d at 185 n.5 (2d Cir. 2006) and collecting cases).[8] Defendant's position that Plaintiff was not qualified for her job because of her absences ignores the line of cases holding that an unpaid leave of absence, particularly for a defined period of time, can be a reasonable accommodation. Thus, the Court finds that Plaintiff has sufficiently shown she would be qualified to do her job, were she granted the reasonable accommodation of a three-day leave of absence.

Plaintiff's *prima facie* case therefore comes down to whether her termination "'took place under circumstances giving rise to an inference of discrimination.'" *Davis*, 804 F.3d at 235 (quoting *Graham*, 230 F.3d at 39). Plaintiff testified that after she approached Klein to ask that her three concussion-related absences be excused, Defendant did not attempt to accommodate Plaintiff's request, and instead terminated her, allegedly because she had accrued at least five points under the attendance policy. Defendant disputes whether Plaintiff made any request for accommodation. As noted above, there is thus a genuine dispute about this critical fact, which must be resolved by a jury. If the jury were to credit Plaintiff's testimony, it could conclude Defendant failed to engage in an interactive process with respect to her request for accommodation, which supports a *prima facie* case of disability discrimination. While failure to engage in an

---

[8] In *Graves*, the Second Circuit noted a tension in the idea that allowing a disabled employee to leave her job allows for her to perform that job's functions. *See Graves*, 457 F.3d at 185 n.5. Nonetheless, because most circuits have considered a finite leave of absence to be a reasonable accommodation, the Court adopts that position as well.

interactive process alone is not sufficient, *see Irizarry*, 2021 WL 1178298 at *6, Plaintiff has also carried her burden of persuasion to demonstrate that her requested accommodation was possible. Plaintiff testified that, when she made the request for an accommodation, the store manager told Plaintiff she "would think about it." ECF No. 61-4 at 22. This demonstrates at least the possibility that the requested forgiveness was available; if it had not been, the supervisor could have refused the request immediately. *See McBride*, 583 F.3d at 101; *Parker*, 204 F.3d at 338 (holding that a plaintiff made a *prima facie* showing where the employer failed to investigate a request for accommodation and instead terminated the employee based on exhaustion of leave); *Piligian*, 2020 WL 6561663, at *5. That Defendant previously granted Plaintiff an unpaid leave of absence for her neck injury further supports Plaintiff's position that an unpaid leave of absence for her concussion-related illnesses was an available accommodation.

For these reasons, the Court concludes Plaintiff has cleared the low threshold for demonstrating a *prima facie* case of disability discrimination. *See DeAngelo*, 105 F. Supp.3d at 174 ("Establishing a prima facie case is 'not a demanding burden.'") (quoting *Hopkins v. New England Health Care Emps. Welfare Fund*, 985 F.Supp.2d 240, 252 (D. Conn. 2013)).

C. <u>Step Two: Defendant's Legitimate, Non-Discriminatory Reason</u>

At step two, Defendant has the burden of producing evidence supporting its contention that there was a legitimate, non-discriminatory reason for the adverse action. *See McBride*, 583 F.3d at 96. Here, Defendant has proffered the legitimate, non-discriminatory reason that Plaintiff was terminated due to accruing at least five points for absences under its attendance policy. *See* ECF No. 57-1 at 16–17. Thus, the Court proceeds with step three of the analysis.

D. <u>Step Three:  Pretext or Other Proof of Discrimination</u>

Finally, the Court holds at step three that a reasonable jury could find in Plaintiff's favor on her disability discrimination claim.  Thus, Defendant's motion for summary judgment must be denied as to Counts One and Four.

Given that Defendant has offered a legitimate non-discriminatory reason for Plaintiff's termination, the burden of production shifts back to Plaintiff to "'produce evidence and carry the burden of persuasion that the proffered reason is a pretext.'"  *McBride*, 583 F.3d at 96 (quoting *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006)).  To demonstrate pretext, a Plaintiff must "introduce evidence from which a reasonable juror could conclude that [an employer's] real motivation was discrimination."  *Stefanidis v. Jos. A. Bank Clothiers, Inc.*, No. 3:14-CV-971 (VAB), 2016 WL 845297, at *5 (D. Conn. Mar. 2, 2016) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) (Title VII case)); *see also Greene v. Enlarged City Sch. Dist. of Middletown, N.Y.*, 606 F. App'x 624, 626 (2d Cir. 2015) (applying same standard in ADA context).

Plaintiff contends that Defendant's reason for termination—an accumulation of more than five points under the employee attendance policy—was pretextual because Plaintiff was not terminated until after her alleged discussion with Klein about forgiving the concussion-related absences as an accommodation.  *See* Pl.'s L.R. 56(a)2 St. ¶¶ 41–42.[9]  As noted above, there is a factual dispute about whether a request for accommodation was made; crediting Plaintiff's testimony, one was, and Plaintiff was fired shortly after making the request.  At oral argument,

---

[9] Defendant contends that Plaintiff did not argue its conduct was pretextual in her briefing, because she contended that *McDonnell Douglas* did not apply to her disability discrimination claim at all.  While Plaintiff's briefing is not a model of clarity, it is clear she advances a theory that Defendant's reason for terminating her was her disability-related absences.  *See, e.g.*, ECF No. 61-1 at 13.  Thus, the Court considers Plaintiff's brief as raising a dispute about step three of the *McDonnell Douglas* analysis, though inartfully so.

Defendant asserted that the decision to terminate Plaintiff had already been made in early August, but because Plaintiff was not present at work from August 8, 2021, until August 22, 2021, Defendant could not initiate termination proceedings. As noted above, because Defendant only raised this argument at oral argument, not in its briefing, the Court may not rely on it.

In its papers, Defendant contends that Plaintiff had accumulated five points under the policy by August 20, and thus Plaintiff was eligible for termination as of that date. Def.'s L.R. 56(a)2 St. ¶ 43; Klein Aff., ¶ 5. Defendant argued in its briefing that "it is undisputed that once Plaintiff accumulated five points, she was subject to termination," and "[i]ndeed, this was the exact legitimate and nondiscriminatory reason for which her employment was terminated." ECF No. 57-1 at 17. But drawing all reasonable inferences in Plaintiff's favor—as the Court must on summary judgment—the record reflects that Plaintiff was not terminated until August 26, definitively after she alleges informing Klein of a request for accommodation.[10] Pl.'s L.R. 56(a)2 St. ¶ 46. Plaintiff's internal attendance record shows that Plaintiff had a reported "Late_Out" designation for August 22. Pl. Attendance, Ex. M, Def.'s Mot., ECF No. 57-2 at 82. Although the meaning of "Late Out" is not explained by Defendant, it is reasonable to infer that Plaintiff was at least present in the store for some part of that day. Thus, applying the logic Defendant provided at oral argument, Plaintiff could have been terminated that day, if the decision to terminate her had been reached by August 20. A reasonable jury could conclude that Defendant's delay in terminating Plaintiff until *after* Plaintiff alleges she made a request for accommodation, demonstrates a "weakness . . . or contradiction[]" in Defendant's proffered legitimate non-discriminatory reason. *Primmer*, 667 F. Supp. at 260–61.

---

[10] While Plaintiff does not clearly identify on what date she spoke to Klein about an accommodation, it necessarily must have come after August 20 and before August 26, given that she requested retroactive forgiveness of her August 18-20 absences.

Further, Plaintiff was terminated, at most, five days after she claims to have made her request for accommodation. Def.'s L.R. 56(a)1 St. ¶ 46; ECF No. 57-2 at 37–38. Taken together with Klein's alleged comment immediately following Plaintiff's request that Plaintiff should have saved her sick leave and use this as a "learning experience,"[11] ECF No. 61-4 at 22, a reasonable jury could find that Plaintiff's alleged disability and her request for accommodation of that alleged disability was the but-for cause of her termination under the ADA, and, by extension, also find she has met the more lenient standard of a motivating factor for her termination under the CFEPA.

For these reasons, Defendant's motion for summary judgment as to Counts One and Four, Plaintiff's disability discrimination claims, is denied.

## V.    COUNTS THREE AND SIX:  RETALIATION CLAIMS

Plaintiff alleges that she engaged in protected activity (seeking an accommodation for her concussion) and as a result suffered an adverse employment action in retaliation—her termination. For largely the same reasons as above, this claim, too, survives Defendant's summary judgment motion.

---

[11] While offensive remarks with nothing more are generally insufficient to allege discrimination, "if there is a nexus between the remark and the plaintiff's termination, there may be sufficient evidence of pretext to survive a motion for summary judgment." *Koppenal v. Nepera, Inc.*, 74 F. Supp. 2d 409, 413 (S.D.N.Y. 1999); *see also Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 56 (2d Cir. 1998). In determining whether certain remarks are probative of discriminatory intent and are therefore admissible at trial, the Second Circuit has directed courts to consider: "(1) who made the remark (i.e., a decision-maker, a supervisor, or a low-level co-worker); (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark (i.e., whether a reasonable juror could view the remark as discriminatory); and (4) the context in which the remark was made (i.e., whether it was related to the decision-making process)." *Henry v. Wyeth Pharms., Inc.*, 616 F.3d 134, 149 (2d Cir. 2010); *see Gaydos v. Sikorsky Aircraft, Inc.*, No. 14-CV-636 (VAB), 2016 WL 4545520, at *12 (D. Conn. Aug. 31, 2016) (at summary judgment stage, district court applied the four-part test set forth in *Henry* with respect to the pretext step of its *McDonnell Douglas* analysis). Here, Klein was the store manager with the power to approve Plaintiff's accommodation, made the remark less than a week before Plaintiff was terminated in the context of a discussion about Plaintiff requesting an accommodation for her disability, and the comment contained language about a lesson needing to be learned that a reasonable jury could find to be discriminatory. These factors suggest that Klein's comment would be probative of whether Defendant discriminated against Plaintiff in this case, and therefore supports Plaintiff's position that Defendant is not entitled to summary judgment.

"Like discrimination claims, retaliation claims are analyzed using the *McDonnell Douglas* burden-shifting framework." *Frantti v. New York*, 850 F. App'x 17, 21 (2d Cir. 2021) (citing *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 223 (2d Cir. 2001)).[12]  To demonstrate a *prima facie* case of retaliation, Plaintiff must first show "(1) [s]he engaged in an activity protected by the ADA [or CFEPA]; (2) the employer was aware of this activity; (3) the employer took adverse employment action against [her]; and (4) a causal connection exists between the alleged adverse action and the protected activity." *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002).  A causal connection may be established directly or indirectly.  *See Genn v. New Haven Bd. of Educ.*, 219 F. Supp. 3d 296, 323 (D. Conn. 2016).  "Indirect evidence can be established by demonstrating that the 'protected activity was followed closely by discriminatory treatment, or through other evidence such as disparate treatment of [others similarly situated] who engaged in similar conduct.'" *Zuro v. Town of Darien*, 432 F.Supp.3d 116, 127 (D. Conn. 2020) (quoting *id.*).

As analyzed above, a reasonable jury could find that Plaintiff engaged in protected activity under the ADA/the CFEPA (a request for accommodation) and that Defendant was made aware of her request.  It is undisputed that Plaintiff was terminated from her position.  A reasonable jury could find a causal connection between Plaintiff's termination and her request for accommodation. First, Plaintiff's termination occurred quickly on the heels of her request for accommodation. While Plaintiff does not specify on what day she spoke with Klein, Plaintiff's request for her absences to be forgiven had to have come sometime after her last absence on August 20, 2021. *See* ECF No. 61-4 at 22–23.  Plaintiff's termination then followed less than one calendar week later, on August 26, 2021.  Thus, Plaintiff's termination occurred within at most six days of her notifying Defendant that she was requesting an accommodation for her disability.  Based on the

---

[12] This framework applies both to claims under the ADA and the CFEPA.  *See DeAngelo*, 105 F.Supp.3d at 180.

temporal proximity between Plaintiff's request for accommodation and her actual termination, along with the other evidence discussed above in connection with Plaintiff's disability discrimination claim, a reasonable jury could find that Plaintiff's termination was retaliation for her protected activity of requesting accommodation. Thus, Defendant's motion for summary judgment as to Plaintiff's retaliation claims, Counts Three and Six, is also denied.

## VI.    CONCLUSION

For the reasons described herein, Defendant's motion for summary judgment is DENIED. The Court will convene a status conference to set a trial date and deadlines for pretrial submissions.

**SO ORDERED** at Hartford, Connecticut, this 17th day of September, 2025.

_/s/ Sarala V. Nagala_____
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE